IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTONIO MEDRANO ORTIZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV764 |
| | ) | |
| TAMIKA SMITH, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a prisoner of the State of North Carolina housed at Scotland Correctional Institution, submitted a pro se complaint under 42 U.S.C. § 1983 and requests permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § l915(a). The Complaint names as Defendants a nurse employed at Scotland Correctional, Kerri A. Cable, and seven officers or administrators at the prison, Tamika Smith, Charlie T. Locklear, William L. Bullard, Sgt. Bernie, Officer Barkley, Sgt. Jacobs, and Sgt. Adams. Plaintiff seeks damages and injunctive relief.

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Applicable here, plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

For the reasons that follow, the Complaint should be dismissed pursuant to 28 U.S.C. § 1915A(b) because it fails to state a claim on which relief may be granted.

The Complaint contains allegations related to several somewhat connected events occurring between November 26, 2023 and April 24, 2024. The Complaint describes

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

Plaintiff as a 54-year old dialysis patient with a number of medical problems and a CPAP machine to aid him in sleeping. (Docket Entry 3 at 3.)[2] It adds that he is a non-smoker, does not use drugs, and does not associate with a gang. (Id.) In April of 2023, Plaintiff transferred to Scotland Correctional from a medical unit at Central Prison in Raleigh in order to receive dialysis treatment. (Id.) The Complaint alleges that Scotland correctional has high levels of gang violence and that Plaintiff was housed in a "small area compressed with 83 other inmates" who smoked drugs and tobacco products. (Id.) Plaintiff filed a grievance claiming that he was "ADA approved" and wanted to move to area without as much tobacco smoke. (Id.) However, no move occurred.

On November 26, 2023, another inmate attacked Plaintiff while he slept, damaging Plaintiff's eye. (Id. at 4.) Plaintiff approached Defendant Adams and told her. (Id.) He was then escorted to the infirmary and, later, taken to a local hospital which then sent him to a second hospital. (Id. at 4-5.) Doctors at that hospital determined that Plaintiff needed surgery but they could not do it until the next day. (Id. at 6.) Officers then returned Plaintiff to prison where Defendant Bernie admitted Plaintiff to restrictive housing and placed him in a room without a plug for his CPAP machine. (Id.) Plaintiff also allegedly asked Defendant Bernie for cleaning supplies to disinfect the room, but Defendant Bernie never moved him to another room or brought cleaning supplies. (Id. at 7.) Some time later, Plaintiff's eye became infected and he began to have fever, chills, and diarrhea. (Id.)

---

[2] Citations to page numbers in the record refer to those in the Court's electronic filing system, not those handwritten by Plaintiff.

For reasons that are not clear, Plaintiff did not receive surgery on his eye the next day. Instead, he went to dialysis treatment. (Id.) The pain in his eye was allegedly severe and caused the alarm on the dialysis machine to sound, so Plaintiff declared a medical emergency due to the pain and was taken to the infirmary. (Id. at 8.) Upon arrival at the infirmary, staff assessed Plaintiff and an unidentified medical provider ordered an assistant to give Plaintiff Tylenol for his pain before leaving to see other patients. (Id.) Defendant Cable, a nurse at the prison, saw Plaintiff and asked about the situation. (Id.) A guard explained it before Defendant Cable then asked Plaintiff about the nature of his emergency. (Id. at 9.) After Plaintiff explained the pain in his eye, Defendant Cable allegedly told him that it did not constitute a medical emergency and told the guard to take Plaintiff out. (Id. at 9-10.) At that point, however, the assistant arrived with a small cup containing four pills. (Id. at 10.) Defendant Cable allegedly stopped her from handing it to Plaintiff, stated that Plaintiff was not supposed to receive four pills, threw three of the pills away, and offered the remaining pill to Plaintiff. (Id.) Plaintiff's statement of facts is silent as to whether or not he took the pill, but he attempted to convince her that he was supposed to receive all of the pills. (Id.) Defendant Cable allegedly shook her head and had the guard take Plaintiff back to his housing before he could get the attention of the provider who ordered the medicine. (Id.)

At some point, Plaintiff returned to regular housing in the same unit where the original assault occurred. (Id. at 15.) On February 23, 2024, he allegedly informed Defendant. Jacobs that he wanted to go to a different location because he did not want to be where he was assaulted, he did not want to be around tobacco smoke and drugs, and he was "ADA

approved [and] neeed[ed] to be accommodated." (Id.) He allegedly repeated this request to Defendant Jacobs on February 26, 2024, adding that he "had issues" with his bunkmate, Kevin Osbourne, a heavy tobacco and drug user who "want[s] to take it out on others every time he does not have something to smoke." (Id. at 15-16.) Defendant Jacobs allegedly refused to move Plaintiff, so Plaintiff then made the same request to Defendant Adams on February 28, 2024, although he did not mention Osbourne. (Id. at 16.) Defendant Adams allegedly replied, "'I don't move nobody.'" (Id.) On March 7, 2024, Plaintiff returned from eating to discover that his personal property locker had been forced open. (Id.) He then inquired about his property to Osbourne who allegedly attacked him, causing Plaintiff to first defend himself, but then run before being attacked with a hard object. (Id.) Plaintiff was treated somewhat at the prison before being transferred by helicopter to a hospital for an emergency operation. (Id. at 16-17.) Plaintiff filed grievances which were denied. (Id. at 17.)

Finally, on April 24, 2024, Defendant Officer Barkley took Plaintiff to dialysis. (Id.) Plaintiff saw one technician at the door assessing another patient, but saw his usual technician already waiting for him inside. (Id. at 17-18.) As he began to walk in, Defendant Barkley told him to wait. (Id.) Plaintiff explained that the first technician was only assessing her patients and that his technician was waiting. (Id. at 18.) Defendant Barkley allegedly approached Plaintiff in a "threatening manner" while pointing his finger at Plaintiff's forehead, saying "let me tell you something, let me tell you something" and pushing Plaintiff with his belly. (Id.) One of the pushes allegedly caused Plaintiff to fall. (Id.) As he tried

to get up, his face touched Defendant Barkley's "man organs" but Defendant Barkley allegedly still pushed against him. (Id.) Plaintiff looked around to see if there were cameras filming the incident and, seeing none, he later wrote a grievance demanding that the prison install cameras in the dialysis unit. (Id.) He also requested an investigation, which was conducted by Defendant Smith. (Id. at 18-19.) The results of that investigation are not set out in the Complaint, but it alleges that Plaintiff exhausted the grievance process for this incident without any relief. (Id. at 19.)

Based on the facts just alleged, the Complaint claims that Defendants violated Plaintiff's rights under the Eighth Amendment of the United States Constitution and the Americans with Disabilities Act (ADA). (Docket Entry 2 at 3.) It seeks $500,000 in compensatory and punitive damages from each Defendant, declaratory relief that they violated Plaintiff's rights, and injunctive relief in the form of a court order directing the transfer of Plaintiff to a non-smoking facility, the installation of cameras in the dialysis unit of Scotland Correctional, and the provision to Plaintiff of "ADA equipment" in the form of over-the-head headphones. (Id. at 9-10.)

As an initial matter, the Complaint nominally attempts to raise claims under the ADA. However, "the ADA . . . [does] not provide any causes of action against individual defendants in their individual capacities." Keith-Foust v. North Carolina Central Univ., No. 1:15CV470, 2016 WL 4256952, at *13 (M.D.N.C. Aug. 11, 2016) (unpublished). Further, to the extent that Plaintiff seeks to proceed directly against a state agency or to present official capacity claims against individual Defendants, those statutory disability-related

claims raise complex issues regarding sovereign immunity. See generally United States v. Georgia, 546 U.S. 151 (2006); Chase v. Baskerville, 508 F. Supp. 2d 492 (E.D. Va. 2007).[3] In this instance, the Court need not grapple with those issues because Plaintiff's disability claim fails for a more basic reason:

> [T]he ADA [ ] mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that this provision applies to state prisoners. See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998) ( "[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates."). In order to state a violation of Title II, a plaintiff must allege that: 1) he or she is a qualified individual with a disability; and 2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reasons of his or her disability. See Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir.2004); Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y.2003). The second prong requires the disabled plaintiff to allege that his or her mistreatment "was motivated by either discriminatory animus or ill will due to disability." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir.2001). This animus requirement reflects the purpose of Title II, which is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir.1998).

Elbert v. New York State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010) (internal parallel citation omitted). Here, the Complaint does not contain facts establishing that Plaintiff is disabled within the meaning of the ADA. Further, it does not identify any service, program, or activity from which Defendants allegedly excluded him or

---

[3] Nor can Plaintiff maintain a claim under § 1983 against a state agency or individual defendants employed by a state agency in their official capacity except (as to the latter) for injunctive relief. See generally Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

-7-

any facts supporting a finding that Defendants' actions were motivated by animus or ill will due to Plaintiff's alleged disability. Therefore, the Complaint does not state any claim for relief under the ADA.

Turning now to Plaintiff's claims under § 1983, the first three Defendants listed in the Complaint are Tamika Smith, Charlie T. Locklear, and William L. Bullard. The Complaint appears to contain no allegations at all regarding Defendant Bullard and, therefore, clearly fails to state any claim against him. As for Defendants Smith and Locklear, the Complaint contains the above allegation that Smith performed the investigation of the alleged incident between Plaintiff and Defendant Barkley. It also states that both of these Defendants handled prison grievances. (Docket Entry 2 at 7.) These Defendants did not somehow violate Plaintiff's rights by conducting an investigation or answering grievances. Plaintiff has no right to any particular outcome for an investigation or any right to an investigation, even a criminal investigation, enforceable under § 1983. Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir.1985); see also Day v. Idaho Dep't of Corr., No. 99-35427, 1999 WL 1269339 (9th Cir. Dec. 27, 1999) (unpublished) (applying Gomez in prison setting). Similarly, he has no right to any particular outcome for grievances he filed or any substantive right to a grievance process at all. Grieveson v. Anderson, 538 F.3d 763, 772 n.3 (7th Cir. 2008) (no substantive right to a grievance procedure); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (no right to any grievance procedure or to access any procedure voluntarily created by the State). Therefore, the Complaint states no claim against Defendants Smith or Locklear based on an investigation or their handling of grievances. It is also possible that Plaintiff named these

three Defendants based on their positions as supervisors at Scotland Correctional. If so, this attempt to state a claim also fails because theories of *respondeat superior* or liability predicated solely on a defendant's identity as a supervisor do not exist under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). For all of these reasons, the Complaint fails to state any viable claims against Defendants Smith, Locklear, and Bullard.

The next Defendant listed in the Complaint is Defendant Bernie. As previously set out, it alleges that when Plaintiff returned to Scotland Correctional after his initial injury and trip to a hospital, Defendant Bernie placed Plaintiff in a cell where he could not use his CPAP machine and he did not provide Plaintiff with requested cleaning supplies so that he could disinfect the cell to help prevent infection in his injured eye. To establish his claim, Plaintiff must plead facts showing that Defendant Bernie acted with deliberate indifference to his serious medical needs Estelle v. Gamble, 429 U.S. 97, 104 (1976); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). More specifically,

> [a] medical need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." [Iko, 525 F.2d at 241] (internal quotation marks omitted). A defendant displays deliberate indifference where he possesses knowledge of the risk of harm to an inmate and knows that "his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Id. (emphasis and internal quotation marks omitted); see also Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" (brackets in original) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994))).
>
> "[D]eliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S.

-9-

>   at 835. "It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). A plaintiff can satisfy this standard by showing " 'that a [defendant] knew of a substantial risk from the very fact that the risk was obvious.' " Scinto, 841 F.3d at 226 (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)).

Durand v. Charles, No. 1:16CV86, 2016 WL 7495811, at *4 (M.D.N.C. Dec. 30, 2016) (unpublished), report and rec. adopted, 2017 WL 389108 (M.D.N.C. Jan 26, 2017).

Plaintiff previously filed a lawsuit naming Defendant Bernie as a defendant based on Defendant Bernie assigning him to housing where he could not use his CPAP machine on another occasion. The Court dismissed those claims because Plaintiff failed to allege facts that would establish that Defendant Bernie was deliberately indifferent to a serious medical need or that Plaintiff was physically harmed by any temporary loss of the use of the CPAP machine. Ortiz v. Pinkney, No. 1:24CV262, 2024 WL 2190100, at *2 (M.D.N.C. May 1, 2024) (unpublished), report and rec adopted, 2024 WL 2188903 (M.D.N.C. May 15, 2024) (unpublished), aff'd, 2024 WL 4579408, (4th Cir. Oct 25, 2024) (unpublished). Plaintiff's present claim based on the temporary loss of the CPAP machine fails to state any claim upon which relief can be granted for those same reasons and should be dismissed. As for the allegation regarding the cleaning supplies, the Complaint does not contain facts demonstrating that the lack of supplies constituted a serious medical need known or obvious to Defendant Bernie. Certainly, Plaintiff's eye injury was an obvious medical need, but it was being addressed by other medical providers. There is no allegation that those providers concluded that Plaintiff's housing should be disinfected or that Defendant Bernie knew of

any such conclusion.  The Complaint also does not allege facts demonstrating that the condition of the housing was such that Defendant Bernie would have known of any excessive risk to Plaintiff.  Therefore, the current Complaint fails to state any claim as to Defendant Bernie.

The Complaint next lists Defendant Cable on the grounds that she denied Plaintiff proper pain medication when he visited the infirmary on November 27, 2023.  In order to state such a claim, Plaintiff again must set out facts satisfying the standards set out above. He fails to do so.  The Complaint alleges that another provider ordered pain medication for Plaintiff, that an assistant brought four pills at once, that Defendant Cable threw three of the pills away, and that she only gave one to Plaintiff while stating that he was not supposed to receive four pills.  A medical record submitted by Plaintiff in support of the Complaint states that Plaintiff was prescribed Tylenol four times a day by a nurse practitioner but that he erroneously believed he was supposed to receive four tablets each time instead of one. (Docket Entry 4-4 at 8.)  Cable consulted with the nurse practitioner.  (Id.)  She then attempted to provide Plaintiff with the one tablet of Tylenol, he refused it saying "'get out of my face.'"  (Id.)  Based on these facts, the Complaint does not state any claim for relief against Defendant Cable.  As an initial matter, Plaintiff refused the medication offered by Defendant Cable, which raises questions concerning the seriousness of his medical need and Defendant Cable's responsibility for any continuing pain he suffered.  Even putting aside those issues, the allegations in Complaint and the attached medical exhibit support at most a conclusion that Defendant Cable attempted to provide Plaintiff with the medication she

-11-

Case 1:24-cv-00764-LCB-LPA   Document 6   Filed 11/12/24   Page 11 of 18

believed he had been prescribed, but that she misunderstood the prescription. If true, this might amount to negligence or medical malpractice on her part, but not deliberate indifference. Therefore, the Complaint does not state any claim for relief under § 1983 as to Defendant Cable and the claim against her should be dismissed.

The Complaint next lists Defendant Barkley based on his allegedly bumping Plaintiff to the floor and continuing to bump him when Plaintiff attempted to get up. This appears to be an attempt at stating a claim based on a use of excessive force. Regarding excessive force, "[a]fter incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Ingraham v. Wright, 430 U.S. 651, 670 (1977) (internal citations and quotations omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The primary inquiry thus becomes "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. The Fourth Circuit has noted "four non-exclusive factors to assist courts in assessing whether an officer has acted with 'wantonness': (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts to temper the severity of a forceful response." Iko, 535 F.3d at 239 (internal quotations omitted). Further, the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses

-12-

Case 1:24-cv-00764-LCB-LPA   Document 6   Filed 11/12/24   Page 12 of 18

of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.' An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins .v Gaddy, 559 U.S. 34, 37-38 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal citations and some internal quotation marks omitted).

According to the facts alleged in the Complaint, Defendant Barkley gave Plaintiff a direct order which Plaintiff attempted to ignore. The Complaint explains why Plaintiff believed the order to be a bad or erroneous one. However, there was nothing illegal or harmful about it and Plaintiff could have easily complied instead of disputing what Defendant Barkley told him. Instead, he challenged the order. Defendant Barkley allegedly responded by pointing at Plaintiff and bumping him with his belly, which caused Plaintiff to fall. However, nothing in the Complaint supports a conclusion that the fall was Defendant Barkley's intent. Further, in attempting to stand up, Plaintiff made contact with Defendant Barley's clothed mid-section. Although Barkley did continue to bump Plaintiff at that point, the Complaint does not contain facts to support any sexual intent by Defendant Barkley as opposed to a continued desire to use minimal force to communicate to Plaintiff that he was not to disobey or dispute Defendant Barkley's orders. Doubtless, the described situation was embarrassing to Plaintiff, but he suffered no physical harm and embarrassment does not violate the Constitution. In the end, the Complaint alleges the exact type of push or shove that does not state a valid excessive force claim because it excluded from the Eighth Amendment's protections. In any event, Plaintiff's lack of physical injury from this incident

means that he could not receive damages because a prisoner cannot seek damages for mental injuries without a showing of physical harm. 42 U.S.C. § 1997e. Plaintiff is not entitled to any compensatory damages and no other relief is appropriate based on the facts alleged. In particular, Plaintiff requests that the Court order that Scotland Correctional install security cameras in the dialysis area where the incident allegedly occurred. However, the balance between general security and the privacy of prisoners receiving medical treatment is a decision for prison authorities, not the Court. The single alleged incident which did not result in any injury to Plaintiff could not justify the Court entering an order altering that balance. For all of these reasons, the Complaint fails to state any claim for relief based on the incident with Defendant Barkley.

Finally, the Complaint names Sgt. Jacobs and Sgt. Adams as Defendants based on Plaintiff's housing location at the time Osbourne assaulted him. According to the Complaint, Plaintiff asked both of these Defendants to change his housing assignment for various reasons. It is initially worth noting that Defendant Adams allegedly responded to Plaintiff's request that she does not move people. Based on this, it is not clear she even had the power to transfer Plaintiff. However, even if she did, the Complaint does not state any claim for relief based on the fact that she and Defendant James did not move him. There is a general duty on the part of prison officials to protect inmates from assaults by other inmates. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, not every assault gives rise to a constitutional violation on the part of prison officials. Instead, an inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison

-14-

officials demonstrated deliberate indifference to the inmate's health and safety. Id. Here, Plaintiff alleges no facts showing that he was an inmate particularly likely to be assaulted, that Osbourne was known to be violent or prone to assault others as opposed to simply being disagreeable when he could not get drugs or tobacco, or that animosity existed between Plaintiff and Osbourne such that there was an excessive risk of Plaintiff being assaulted. See, e.g., id. (involving a vulnerable inmate who was transsexual); Brown v. North Carolina Department of Corrections, 612 F.3d 720 (4th Cir. 2010) (involving an inmate assaulted after being placed in a vulnerable position by guards who knew of a grudge held by another inmate). His allegations appear to be more consistent with negligence, at most. However, simple negligence fails to implicate the rights secured by the Constitution or the laws of the United States. See, e.g., Davidson v. Cannon, 474 U.S. 344, 348 (1986) (failure to take due care, as opposed to deliberate indifference to possible harm, is not the sort of governmental abuse which the Due Process Clause was designed to prevent); Estelle v. Gamble, 429 U.S. 97, 106, 104 (1976) (only deliberate indifference on part of supervisory official to potential harm can offend the "evolving standards of decency" in violation of the Eighth Amendment). Plaintiff must allege facts showing deliberate indifference to a clear risk to his safety and he does not do so in the present Complaint.

The second reason for Plaintiff's requested transfer was to move him to an area with less second hand tobacco smoke. He again refers to his use of a CPAP machine and having rights under the ADA in raising this claim. As noted above, the Complaint is utterly devoid of any facts stating a claim under the ADA. It also does not set out facts showing that any

-15-

Case 1:24-cv-00764-LCB-LPA   Document 6   Filed 11/12/24   Page 15 of 18

second-hand smoke somehow prevented Plaintiff from sleeping properly with his CPAP or caused him to suffer a particular health problem. Further,

> imates . . . have no constitutional right to be housed in any particular prison or housing unit. Meachum v. Fano, 427 U.S. 215 (1976). In decisions concerning housing of specific prisoners, the courts must defer to the expertise and discretion of prison officials who are much better equipped to analyze prison security needs; judicial inquiry must remain limited to whether a particular prison system or regulation violates constitutional or federal law. See Block v. Rutherford, 468 U.S. 576 (1984).

Garrett v. Angelone, 940 F. Supp. 933, 942 (W.D. Va. 1996), aff'd, No. 96-7488, 107 F.3d 865 (table) (4th Cir. 1997) (unpublished). The Complaint also fails to identify any potential alternative housing that Defendants Jacobs or Adams had the authority to move him into. The possession and use of tobacco products is banned as a matter of statutory law in North Carolina prisons and is subject to disciplinary action. See N.C. Gen. Stat. § 148-23.1. Therefore, if inmates were indeed smoking in Plaintiff's housing area, it was an occurrence that would be both noticeable and forbidden, which raises questions concerning how often it could actually happen. Those questions aside, the Complaint contains no allegations establishing that any housing area available to Plaintiff provided a different situation, i.e. that inmates in a different housing unit did not also break the law and use tobacco and drugs if an opportunity arose. Therefore, it fails to demonstrate that Defendants Jacobs and Adams could have remedied the alleged situation but failed to do so.

Finally, Plaintiff may be attempting to raise a cruel and unusual punishment claim as to his general housing conditions. There are very high standards for this type of cruel and unusual punishment claim.

-16-

> In order to establish that [he] has been subjected to cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of [a] basic human need was objectively 'sufficiently serious,'" and (2) that " subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (second alteration in original) (quoting Wilson [v. Seiter], 501 U.S. [294,] 298 [(1991)]). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Hudson [v. McMillian], 503 U.S. [1,] 8-9 [(1992)]. In order to demonstrate such an extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions, see Helling [v. McKinney], 509 U.S. [25,] 33-35 [(1993)]. The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[D]eliberate indifference entails something more than mere negligence ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. See id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995).

De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal parallel citations omitted). The current Complaint does not contain allegations satisfying these standards or facts establishing that Defendants Jacobs and Adams were aware of any such conditions. It fails to state a claim for relief against them or any other Defendants and should be dismissed accordingly.

As a result, Plaintiff's request to proceed *in forma pauperis* should not be countenanced, with the exception that *in forma pauperis* status shall be granted for the sole purpose of entering this Order and Recommendation.

Plaintiff has submitted the Complaint for filing, however, and, notwithstanding the preceding determination, § 1915(b)(1) requires that he make an initial payment if funds exist for such a payment. A review of Plaintiff's *in forma pauperis* application reveals that they do not. Therefore, the Court will not order any initial partial payment, but will instead order that Plaintiff's custodian withdraw funds from Plaintiff's prison trust account as they become available.

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of December of 2024, and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS RECOMMENDED that this action be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted.

This, the 12th day of November, 2024.

                                                /s/ L. Patrick Auld
                                                  **L. Patrick Auld**
                                    **United States Magistrate Judge**